[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10585
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cr-00097-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE LUCLARE WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 4, 2019)

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Maurice Williams appeals his convictions for possession with intent to distribute controlled substances, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm by a convicted felon.  On appeal, he argues that the district court abused its discretion by admitting text messages and a recorded phone call into evidence.  He contends that this evidence should have been excluded as hearsay.  Because Williams cannot show that the district court abused its discretion in admitting the evidence, we affirm.

## I.    FACTUAL BACKGROUND

This case began when Williams was driving a GMC Yukon on Interstate 95 in Pooler, Georgia.  A Pooler police officer, Craig Bogden, clocked the Yukon traveling 89 miles per hour in an area where the speed limit was 70 miles per hour.  Bogden pursued the Yukon in his squad car and activated his lights and siren, signaling for the Yukon to pull over.  The Yukon slowed to 70 miles per hour and activated its turn signal as if it were going to pull over.  The vehicle, instead, increased its speed and traveled on the interstate for several more miles.  Bogden pursued the vehicle and learned from radio communications that the Yukon had been reported stolen.

The Yukon exited the interstate.  At this point, officers from several other law enforcement agencies had joined the chase.  The officers followed the Yukon,

2

which was traveling at speeds of over 120 miles per hour. One officer deployed a strip spike to deflate the Yukon's tires. After driving over the strip, the Yukon turned into a residential subdivision and drove down a cul-de-sac. At the end of the cul-de-sac, the Yukon proceeded down a driveway, through a backyard, and back onto the street. The vehicle then drove through another yard.

The Yukon came to a stop in the yard. The Yukon's driver jumped out and ran into the woods behind a home. A split second later, a passenger in the Yukon threw a black bag out the vehicle's window. Officers pursued the driver on foot and apprehended him. They searched the driver and found in his wallet a state-issued identification card identifying him as Maurice Williams, as well as approximately $1300 cash and a small amount of marijuana.

Other officers removed the passenger from the Yukon. The passenger was Shasta Stewart. Stewart appeared to be under the influence of drugs and was taken to the hospital. The officers searched the Yukon and recovered a red Samsung cellphone.

Officers also recovered the bag Stewart threw from the Yukon. Inside the bag, they found a revolver, ammunition, and a knife. They also found controlled substances, including more than 7 grams of cocaine and 14 grams of heroin as well as smaller quantities of other controlled substances, including morphine,

3

amphetamine, and hydrocodone.  The bag contained other items typically used in the distribution of illegal drugs:  digital scales, whisks, a crack pipe, a strainer, rolling papers, a razor blade, plastic bags, a glass beaker, and baking soda.

After the incident, Williams was indicted for possession with intent to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon.  Stewart was never charged with any crime for her role in the incident.  Williams pled not guilty and was tried before a jury.

The central issue at trial was whether the items in the bag belonged to Williams.  Williams argued that the government failed to prove beyond a reasonable doubt that the items in the bag belonged to him, not Stewart.  The government contended that the fact that Williams led officers on a high-speed chase was evidence that the drugs and gun belonged to him.  The government also relied on text messages and a recorded jailhouse phone call to establish that the drugs and gun found in the bag belonged to Williams.

At trial, the government introduced five strings of text messages into evidence.  The government extracted the text messages from the Samsung cell phone found in the Yukon.  At trial, Williams objected to the admission of this

4

evidence, claiming that it contained inadmissible hearsay, but the district court overruled his objection.

The text messages showed the phone had been used to sell drugs.  In one set of messages, the phone received a message asking, "Can You make it 2 girls 1 boy instead[?]"  Gov't Ex. 12C at 1.[1]  The government introduced evidence showing that "girl" was slang for cocaine and "boy" was slang for heroin.  The person using the phone responded, "OK be there in maybe ten at the most."  *Id.*

Other text messages confirmed that the phone was used to sell drugs.  In the second set of messages, a message was sent to the phone asking, "Need some boi u free[?]"  *Id.* at 2.  The person using the phone responded, "Give me bout ten [or] 15 min."  *Id.*  In the third set of messages, the message "you got boy[?]" was sent to the phone.  *Id.* at 4.  The person using the phone responded "Yea."  *Id.*  In the fourth set of messages, a person sent the phone a message saying, "I need some boy."  *Id.*

Yet another text message string tied the phone to Williams.  In that string, the phone received an incoming message stating, "I'm very sick," which was likely a reference to symptoms of heroin withdrawal.  *Id.* at 3.  The person using the

---

[1] Citations in the form "Gov't Ex. X" refer to the government's exhibits introduced at trial.

phone responded, "I got some meds." *Id.* In the next incoming message, the person explained that he or she had deleted phone numbers out of his or her cell phone and asked, "Ok who is this[?]" *Id.* The person using the phone responded "I go by sexual chocolate now lol. REESE." *Id.* According to the government, "Reese" could be a nickname for Maurice, Williams's first name. And the government asserted that the nickname "sexual chocolate" indicated that the phone belonged to Williams, who was black, not Stewart, who was white.

The government also introduced at trial a recording of a jailhouse call and a transcript of the call. After his arrest, Williams was placed in a jail that used a system to monitor and record all telephone calls made by inmates. Using the jail's phone system, Williams called a woman. A witness who was familiar with Stewart's voice identified Stewart as the other participant on the call. In the conversation, Stewart and Williams discussed the high-speed chase and how Stewart threw items out of the Yukon at Williams's direction. Williams objected to the admission of the recording and transcript, arguing that they contained inadmissible hearsay. The court overruled his objection, admitting the recording into evidence. The court did not admit the transcript into evidence but allowed the jury to review it while they listened to the recording.

6

The jury convicted Williams on all charges. Williams was sentenced to a total term of 240 months' imprisonment. This is his appeal.

## II. STANDARD OF REVIEW

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009). "An abuse of discretion occurs if the district court applies an incorrect legal standard or makes findings of fact that are clearly erroneous." *Id.*

## III. LEGAL ANALYSIS

Federal Rule of Evidence 802 ordinarily prohibits the admission of hearsay statements. "Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015); *see* Fed. R. Evid. 801(c). Williams argues that the district court should have excluded evidence of the recorded phone call and text messages because they contained hearsay statements. He argues that the cumulative effect of these evidentiary errors prejudiced his right to a fair trial. We disagree.

## A. The District Court Did Not Err in Admitting into Evidence the Recorded Telephone Conversation.

We begin by considering whether the district court abused its discretion in admitting into the evidence the recorded phone conversation between Williams and

7

Stewart.  In particular, Williams asserts that the following part of the phone conversation contained inadmissible hearsay:

> MW:  [I]f you ever ride with somebody and they try to get away or something, just make sure like, when you're riding like you throw one thing out at a time, like you know, don't try and like, you know, throw a whole thing out at one time, you know, take a little bit in your hand and . . .
>
> SS:  Well usually, you know, whenever you're riding with somebody and they tell you to do something, you just do it!  You know, that's all, you know, you just follow what you're being told . . . You know, in a situation, you know.
>
> MW:  Yeah, yeah, yeah, I wasn't.  Sometimes . . .
>
> SS:  Being very obedient, yeah, being obedient.  Why wasn't I hard headed?  Why (unintelligible)?  Hold on one second, honey.  So yeah, anyway, I also was thinking, you know, the only thing probably that cannot be dropped is the psycho part where that demon possessed you, and yeah, you know, you was a little reckless[.]
>
> MW:  Oh yeah, yeah, yeah.

Gov't Ex. 14B at 4-5 (ellipses and parentheses in original).  The district court did not abuse its discretion because none of these statements qualifies as hearsay.

As an initial matter, Williams's statements on the phone call were admissible as admissions of a party-opponent.[2]  "[A] statement is not hearsay if it

---

[2] The government argues that we should review only for plain error whether Williams's statements on the call were admissible because at trial Williams challenged only the admissibility of Stewart's statements.  We need not decide whether Williams preserved the issue,

is the statement of the party against whom it is offered." *United States v. Munoz*, 16 F.3d 1116, 1120 (11th Cir. 1994); *see* Fed. R. Evid. 801(d)(2)(A).  Here, the evidence plainly shows that Williams made the statements in the call.  His statements thus did not constitute hearsay.

Williams also contends that Stewart's statements were inadmissible as hearsay.  We assume that Stewart's statements were offered to prove the truth of the matter asserted—that she was acting at Williams's direction when she threw the bag with the gun and drugs out of the vehicle.  We nonetheless conclude that the statements were not hearsay because they were adoptive admissions.

A statement that "is offered against an opposing party" and "is one the party manifested that it adopted or believed to be true" is not hearsay.  Fed. R. Evid. 801(d)(2)(B).  To determine whether an adoptive admission has occurred, "the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Jenkins*, 779 F.2d 606, 612 (11th Cir. 1986) (internal quotation marks omitted).  In general, a court must determine whether these criteria are satisfied before admitting the

---

though, because even if we assume that Williams raised the issue below, he cannot show that the district court abused its discretion in admitting his statements.

9

statement.  *Id.*  Requiring such preliminary findings "significantly diminish[es]" the risk of a court erroneously admitting evidence.  *United States v. Joshi*, 896 F.2d 1303, 1312 (11th Cir. 1990).  We nonetheless have recognized that we may make the determination of whether a statement qualifies as an adoptive admission in the first instance so long as the record contains sufficient evidence that the criteria for an adoptive admission are satisfied.  *See id.*

Although the district court failed to make a preliminary determination that Stewart's statements qualified as adoptive admissions, the record contains sufficient evidence that the statements satisfied the criteria for adoptive admissions.  We have explained that the first requirement, whether an innocent defendant would normally be induced to respond, is "of particular relevance in cases involving silent acquiescence" but is "not at issue . . . [when] the defendant is alleged to have responded to [the] statement. . . affirmatively."  *Id.* at 1311-12. Here, Williams responded affirmatively to Stewart's statements on the phone call by responding "[y]eah, yeah, yeah," Gov't Ex. 14B at 4-5, meaning this requirement is satisfied.  We thus focus our analysis on whether there were "sufficient foundational facts from which the jury could infer that [Williams] heard, understood, and acquiesced" in Stewart's statements.  *Jenkins*, 779 F.2d at 612 (internal quotation marks omitted).

10

There were sufficient foundational facts here.  The trial record supports an inference that Williams heard and understood Stewart's statements.  During the phone call, Williams was actively engaged in the conversation.  Indeed, Williams raised no argument at trial or on appeal that he did not hear or understand Stewart's comments.

The evidence also supports a conclusion that Williams acquiesced in the statements.  After Stewart's made the comments, Williams twice responded "[y]eah, yeah, yeah."  Gov't Ex. 14B at 4-5.  A jury could find that, in making these statements, Williams manifested his agreement with and adoption of Stewart's assertion that she was following his directions when she threw the bag out the window.  Based on the record, we conclude that the trial court implicitly admitted Stewart's statements as adopted admissions.  Because Stewart's statements were not hearsay, we discern no error in the court's admission of the phone conversation.[3]

---

[3] Williams's brief addresses only why Stewart's statements were not admissible as statements of a co-conspirator.  Under the Federal Rules of Evidence, statements of an opposing party's co-conspirator made "during and furtherance of the conspiracy" do not constitute hearsay.  Fed. R. Evid. 801(d)(2)(E).  We need not decide whether Stewart's statements were made "during and furtherance of the conspiracy" because the statements are adoptive admissions and thus do not qualify as hearsay for a different reason.  *Id.* 801(d)(2)(B).

**B.    The District Court Did Not Err in Admitting into Evidence the Text Messages.**

Williams also argues that the district court erred in admitting the transcripts of the text message strings retrieved from the Samsung cell phone. Again, we cannot say that the district court erred.

The outgoing text messages sent from the Samsung cell phone qualify as admissions of a party-opponent.[4] The government laid a sufficient foundation to support a jury finding that Williams sent the messages from the phone. First, the phone was found in the Yukon,[5] which supports an inference that it belonged to someone in the car, either Stewart or Williams. Second, in a text message string, the person who used the phone identified himself as "REESE" and "sexual chocolate." Gov't Ex. 12C at 3. A reasonable jury could infer from this message that the phone belonged to Williams, not Stewart. Reese could be a nickname for Maurice, Williams's first name. And the user's description of himself or herself as "chocolate" further supports an inference that the phone belonged to Williams,

---

[4] The government argues that we should review for plain error whether the outgoing text messages were admissible because Williams raised no objection to their admissibility at trial. Again, we need not decide whether Williams preserved the issue, because even if we assume that Williams raised this issue below, he cannot show that the district court abused its discretion.

[5] Williams argues that it is unclear whether law enforcement found the phone in the bag or the Yukon. But Williams has not identified any testimony from a witness that the phone was found inside the bag. The evidence at trial, instead, reflects that the cellphone was found inside the Yukon.

12

who was black, and not Stewart, who was white.  Because the government introduced evidence that Williams possessed and used the cellphone, the outgoing messages were admissions of a party-opponent, not hearsay.  Fed. R. Evid. 801(d)(2)(A).

Williams also argues that the incoming messages sent to the phone should have been excluded as hearsay.  In these messages, individuals were contacting the user of the phone asking him whether he had drugs and stating that they needed to buy drugs.  None of these statements was offered for the truth of the matter asserted because these statements are incapable of being proven true or false.  *See Rivera*, 780 F.3d at 1092-93.  We thus reject Williams's argument that these messages contained hearsay.

Williams's final argument is that the cumulative effect of the district court's erroneous evidentiary rulings warrants reversal of his convictions.  "Even where individual judicial errors . . . may not be sufficient to warrant reversal alone, we may consider the cumulative effects of errors to determine if the defendant has been denied a fair trial."  *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009).  Because Williams has failed to show that the district court erred in admitting any of the challenged evidence, there is no cumulative error.

13

## IV.    CONCLUSION

For the reasons discussed above, we affirm the district court's evidentiary rulings and, consequently, Williams's convictions.

**AFFIRMED.**